---

388                EVIDENCE—ASSIGNMENT FOR CREDITORS.

[Sandusky Circuit Court, October Term, 1885.]

Upson, Baldwin and Haynes, JJ.

*M. B. LEMMON, ASSIGNEE, v. A. E. HUTCHINS ET AL.

1. CERTIFICATE OF ACKNOWLEDGEMENT AS EVIDENCE.

A regular statutory certificate of the acknowledgment of a mortgage, is, in absence of fraud, conclusive evidence of the facts stated therein.

2. EXTENT OF RIGHTS OF AN ASSIGNEE.

In case of an assignment by an insolvent debtor for the benefit of creditors, the rights of the assignee in the property assigned are no greater than those of the debtor prior to the assignment.

The facts are stated in the opinion.

APPEAL from the Court of Common Pleas of Sandusky county.

HAYNES, J.†

Two cases have been submitted involving the same piece of land. They are substantially one case. The question arises in regard to the execution of certain mortgages. The case has been submitted to us upon evidence, and we have found on examination that the matter was more difficult of solution than we had at first supposed, and I may say in the outset that it is a case that has given us considerable difficulty, and we are uncertain that we have come to a correct conclusion in regard to the matter. But the conclusion to which we have come, and the reasons upon which it is founded, I will proceed to state.

The case, in brief, is this: Two brothers, A. E. Hutchins and Marion Hutchins, had formed a copartnership to start in some manufacturing business at Clyde. They purchased a piece of land, executing a mortgage back upon it to the owner, and afterwards desired to borrow money from their father. They proposed to execute to· him a mortgage upon that property. He had already loaned them some money, and having agreed to loan them more, steps were taken to complete the mortgage and complete the loan. After they had come to a conclusion as to what would be done, the father and one of the brothers came to Fremont for the purpose of executing a mortgage. The other brother remained at home and told his brother to go down and execute the mortgage and close the matter up. The other brother came here. The mortgage was drawn, purporting to be signed by each individual member of the firm, was taken before a magistrate, was acknowledged there by the one on behalf of the two, was then taken back to Clyde and delivered to the father, and the money that was to be loaned, $550, was paid over to the boys, and certain notes that the father already had were taken up. The mortgage was for $2,000. The mortgage was then signed by the other brother, A. E. Hutchins. That is, it was signed when the brother got back there, before the business was closed up. It purports to be ac-

---

* This case was dismissed by the Supreme Court for want of preparation, June 10, 1890· It was cited by the circuit court and distinguished in Snyder v. Betz, *post.*

† Stenographic report of oral opinion, revised by Judge HAYNES.

knowledged and signed and sealed in the presence of two witnesses, and is on the face perfectly regular in form.

Some time afterwards the brothers desired to obtain more money from their father, and negotiations were then had in regard to it, and he agreed to loan them $3,000. Then one brother said to the other, that he should go with the father to Fremont and close up the matter. The brother did come down here with the father, and the mortgage was drawn, purporting to be signed in the name of each of the brothers, and was then signed by the one brother for both— that is, he signed the name of each. It was then acknowledged in due form of law, and in the presence apparently of two witnesses, and was closed up, being regular in form. They then went back to Clyde, and the other brother was notified of all that had been done. The father then paid over to them the $3,000, and the brothers received it, and the father received the mortgage. The notes in each case were payable by the firm. The mortgages were then placed upon record.

Afterwards one brother, Marion, executed to the other brother, A. E. Hutchins, a deed of this partnership property—of the real estate—for a nominal consideration, and A. E. Hutchins then went on in business. Subsequently to that he failed and made an assignment to M. B. Lemmon in trust for the benefit of his creditors. One of the suits is brought by the father to foreclose the mortgages, and the other by Moses B. Lemmon, an assignee under the statute, to marshal the liens on the lands and obtain a sale of the lands, and he now, on behalf of the creditors, proposes, or perhaps certain creditors through him, propose, to contest the validity of this mortgage as to the interest of A. E. Hutchins in the property, upon the ground that the mortgage was never properly executed— that it was not executed in accordance with the form of the statute, and the question for us to decide is whether this mortgage is a valid mortgage or not, or one that we will enforce.

In the order of trial here the burden of proof is assumed by the assignee to show that the mortgages were not executed in accordance with the form prescribed by the statute. The proper order of proof, of course, would be for the parties to introduce the record of the mortgages, which would be *prima facie* evidence of the correctness of the execution of them, and then for evidence to be given by the other party. That form was not gone through with, but that was the substance of the proceedings, and we take it to be the form in which we shall examine the evidence.

If we admit the evidence, it is, of course, manifest that the statute was not complied with, because one brother was not before the magistrate. In one instance he did not sign the paper, and in neither case was he present. It is sought to maintain these mortgages on the ground that they being executed by one of the firm for firm purposes, in borrowing money for the firm, therefore one member of the firm had the right to sign for both members, and quite a number of authorities are cited here for the purpose of sustaining that position. The principal case is a case in Wisconsin, where a mortgage was executed by one member of a firm, on behalf of the two, upon a store building which stood upon property that was owned by one member of the firm, and which, it would seem, was held by him in trust for the firm or for himself—I do not know that it states exactly which. But subsequently he mortgaged it to another party. The Supreme Court of Wisconsin held, that one member of a firm might sign an instrument of that kind on behalf of the firm. But the facts, as we understand them, show that the building only was owned by the firm. At least that was what he purported to convey, with sufficient land for it to stand upon—the store building and the land upon which it stood. It was said in argument here, and I suppose it is true—I do not know whether it is or not, except as stated here—that there is no law for the acknowledgement of deeds in the state of Wisconsin before a magistrate; but whether there is or is not, we hardly think that will warrant us in holding in the

state of Ohio, under our statute, that a member of a firm may sign a firm name and acknowledge for the firm a deed for the conveyance of real estate.

I believe all the other cases that were cited were cases where a partner had signed for the firm, and in the firm name, writings obligatory under seal, and it was held, and has been generally held at common law, that where they are so signed by one member of a firm, with the knowledge or by the direction of the other members of the firm, they are binding upon the firm. At any rate, we do not place the holding that we shall make upon the ground that the brother as a member of the firm had a right to bind the firm by signing for himself and his brother both their names upon the deed.

The real question in the case, in our judgment, is whether the defendants here will be permitted to offer evidence for the purpose of showing that this acknowledgment was not in accordance with the statute. That brings us to an examination of the cases that have been decided in this state upon that question.

The case of Baldwin v. Snowden *et al.*, in 11 O. S., 203, is a case that is relied upon. In that case an answer was filed by Mrs. Snowden, against whom the suit had been brought for the purpose of foreclosing certain mortgages upon land that was owned by her, and upon which it was alleged she had given a mortgage to the plaintiff, amounting in all to about $5,000, and in her answer she averred that her husband came to the house on a certain day, she having then been married about a year, and being only about nineteen years of age; that he came into the room where she was sitting with her mother, holding in his hands two or three papers; that he laid them upon a table and said to her that he would like to have her sign those papers, or wished her to do so. Thereupon, without anything further being said, she signed in a place pointed out by him her name, and her mother was thereupon requested to put her name to the papers. The husband then took the papers and left. He had with him a young man by the name of Smith, but nothing was said at the time, as the answer averred, as to Smith's being a notary in any manner or form, nor did he in any way or form speak to the wife or have anything to say to her, what I have stated being all that was said at the time, and the four persons named being the only persons that were then in the room, to-wit: the wife and her mother, and the husband who entered the room with Mr. Smith, the notary. Having set out these facts, and having averred that she did not know what the papers were or what they contained, that she had no intention of giving a mortgage, nor was she informed in any manner that she was signing a mortgage, nor had she authorized her husband to make or deliver any mortgage to the plaintiffs or any other parties in the premises, and having averred that the mortgage was never executed by her, she asked that she be relieved from liability upon it. This certainly made a pretty hard case so far as the wife was concerned, and one that called for relief, perhaps, if any case would. But this is the syllabus of the case:

"A regular statutory certificate of the acknowledgement of a deed of conveyance, made by husband and wife, is, in the absence of fraud, conclusive evidence of the facts therein stated."

I call attention to the case more particularly because of the decision afterwards reported in 36 O. S. The opinion is quite an exhaustive one and was delivered by Judge Scott, who concluded by saying:

"We doubt whether a case can be found where the certificate of the magistrate has been allowed to be impeached on the ground of fraud, without evidence charging the grantee with notice of fraud, or the officer taking it with complicity therein."

They held in that particular case, that the wife was bound by the execution of that mortgage; that if she did not want to execute a mortgage, she should have so stated at the time—she should have manifested it; and that these parties were entitled to hold the mortgage.

It should be said here that the mortgagees were not present and had no knowledge of the manner in which the mortgage was executed, and that is relied upon to a certain extent in the case.

Afterwards, in 1881, a case was decided which will be found reported in the 36 O. S., 664, in which the facts were substantially these: A man by the name of John Carskadden had executed a mortgage, and had two other persons execute the mortgage with him. It would seem that the mortgage was really executed for his benefit. He then took the mortgage to the bank, and executed a note to which he signed the names of all three of the parties, and then went before a magistrate and acknowledged the mortgage on behalf of all three, the other two not being present, and never having authorized either the signing of the note or the delivery of the mortgage. The Supreme Court held that the execution of the mortgage, or the apparent execution of the mortgage by the two others, was not binding upon them. The syllabus of that case is as follows:

"In an action to enforce a written instrument, in the form of a real estate mortgage, and purporting to have been executed and acknowledged as required by statute, an answer setting forth that the defendant never acknowledged the execution of such instrument, is sufficient."

Some reliance is placed in this case upon the fact of this statement, that it was sufficient to answer setting forth that the defendant never acknowledged the execution. I suppose that would be a sufficient answer, because it, in fact, is an answer that he never made the mortgage in any form.

The point that we are discussing really goes to the matter of proof rather than to the matter of pleading. Judge Okey, in deciding this case, made some statements, which, perhaps, tend to a little confusion of the matter, and have caused us some trouble in coming to a conclusion. He says:

"In Pennsylvania, the officer taking the acknowledgment of a deed performs a judicial act, and in favor of *bona fide* purchasers, the certificate is conclusive  Williams v. Baker, 71 Pa. St., 476: Heeter v. Glasgow, 79 Pa. St., 79. In Ohio, ' the magistrate does not exercise judicial functions in taking such acknowledgment. * * *  His act, though official, is purely ministerial.' Truman v. Lore, 14 O. S., 144, 151. Nevertheless, the certificate of such officer, where the grantor actually appeared before him, is, in the absence of fraud, conclusive evidence of the facts therein stated. Baldwin v. Snowden, 11 O. S., 203.''

No such distinction is made in Baldwin v. Snowden. The syllabus of the case is absolute on the question that, except in cases of fraud, the acknowledgment cannot be impeached. And Judge Okey, in the case from which we have been reading, citing the rule says:

" The rigid enforcement of this rule is required for the security of titles and the repose of society, and, indeed, by every consideration of public policy. Hence, where the testimony to impeach a certificate is uncertain or unsatisfactory, a court should decline to interfere; but, according to the decided weight of authority, where fraud is clearly shown, the certificate of acknowledgment should be declared invalid."

Another question is whether or not the assignee in this case stands in any better position than A. E. Hutchins, the assignor. It was said that authorities might be shown in which it would appear that under the decisions in Ohio he would stand in a different or better position; but no such authorities have been submitted to us in the case. There is a case in 33 O. S., Hodgson v. Barrett, p. 63, where it was said by the Supreme Court that the assignee of property takes the property in the same condition as, or has no better rights in it than the assignor, and we suppose that to be the general rule. In cases of fraud, however, where the assignee in insolvency seeks to set aside a sale on the ground of fraud, we have no question that he would be authorized to do it, even in cases where the fraudulent vendor or grantor himself would not be permitted to do it.

It is also true that under the chattel mortgage law the same rule holds in favor of the assignee. I thought there were some other cases, although I have not been able to find them. This 33 O. S., is the only one I have found, and we think the general principle in a case of this kind should be, that the assignee should stand in no better position in regard to this class of property than the maker of the mortgage himself, and we so hold in the case.

Now, we are met by the point that the grantee of the mortgage, the mortgagee in this case, was present during the signing and the acknowledgment of the mortgages. In each of the cases which I have cited, the mortgage was held by a *bona fide* mortgagee, having no knowledge of the imperfect manner in which the instrument was executed. But we should recollect that in these cases the doctrine of estoppel, the doctrine of public policy, is invoked. Certainly no man can stand in a better position than this man stood in relation to these mortgages. There is no question about the *bona fide* character of these mortgages, no question about the intention of these parties to execute the mortgages, and there is an utter absence of fraud in the cases. The father, it is true, was present before the magistrate who took the acknowledgments of the mortgages, but was told there that the mortgages were acknowledged in proper form. He paid his money, or, at least, a portion of his money, upon the faith of those mortgages; and the prior debt for which they were taken was a valid, *bona fide* debt. It seems to us that if there is any case in which on the ground of public policy the doctrine should be enforced that, except in cases of fraud, an acknowledgment should not be permitted to be contradicted, it is just this class of cases. It seems to us that it would be a great wrong if A. E. Hutchins was permitted to come in here himself, or if his creditors, who stand in no better position than he, were permitted to come in here, and to say, after having signed the mortgage in one case, and in both cases, after the signature and acknowledgment, having ratified the same, that he can now dispute the right of the father to recover upon these mortgages. We are aware, of course, of the statute in this state that provides that powers of attorney shall be acknowledged, and the rule of law that has been held in some cases, that the power to authorize another to sign a mortgage must be of the same class and of the same dignity as the instrument itself, to-wit, both must be under seal. But we look upon this as a case where a man has stood by, and has either signed the mortgage in one case himself, or expressly authorized a person to sign it; and one which more nearly comes to a case where a party does a deed himself, than one where he does it by another

We hold, in conclusion, that neither A. E. Hutchins nor the assignee will be permitted to dispute here the execution of these mortgages in favor of this mortgagee, and that in the cases the plaintiff has a decree of foreclosure for the full amount of his mortgages.

M. E. Lemmon, for plaintiff.

Richards & Heffner, for receiver of Clyde Banking Co., defendant; and Finch & Dewey and J. R. Bartlett, for M. Hutchins, defendant.